I'm going to reserve five minutes if I can. All right. Do you want to announce who you are? May it please you, Judge Fischer, Madam Judge, Nelson, Judge DeShima, may it please the Court, My name is Mike Schneider. It's been my privilege since about 1992 to represent Mr. Stratman, and therefore a relative newcomer in his 32-year legal odyssey, to overturn what is, to our knowledge, the biggest land fraud outstanding in the state of Alaska. This is an APA decertification challenge to the Secretary of the Interior's 1974 certification of Leisnoi as a needed village. We contend the Secretary certified a ghost town. We won in 1999 before the ALJ, where the ALJ found that Leisnoi was ineligible under any theory. We, those findings were largely affirmed by IBLA in late 2002. Things were going along nicely until the Secretary, just in time to ruin the Christmas of 2002, 2006, conveniently decided to announce himself the winner in this fight by deferring to and adopting the litigation position of the government set forth in the Deputy Solicitor's Memorandum that is well described in the record here. In September, late September of 2007, as the record makes clear, the Federal District Court largely adopted the reasoning of the Secretary and the Memorandum, dismissed our case, we timely appealed. We are here today because we believe that the law of the circuit and the rules of statutory construction simply will not abide the outcome that we have suffered below. This matter, in this case, our detractors contend that Section 1427 of ANILCA, without so much as breathing a word of it, in essence repealed the ANCSA village eligibility provisions, the ANCSA enforcement provisions, and the provisions of the APA that would allow an action just like the one Mr. Stratman has otherwise successfully brought. Counsel, let me just ask this question. It's hard to refer to plain language, but looking at the statute, it seems to me, identifies Lesnoy as a cognac deficiency beliefs corporation. Sure. And it would have very little choice but to identify Lesnoy as a village corporation because at the time of ANILCA's passage, 1980, the Secretary had indeed certified Lesnoy as a native village. And the IBLA comments upon this pretty effectively, it's in Excerpts of the Record, Volume 1, page 115, I want to show you, it is 115, there was no reason, there was no pending outstanding challenge to Lesnoy's certification. And not only that, the issues regarding Lesnoy's eligibility, to the extent there were any out there, were virtually hidden from conference by Lesnoy's attorney, Mr. Weinberg, who drafted the ANILCA legislative history. If you look at Appendix Bravo and Appendix Charlie to our brief, respectively, you will see that Bravo is the official legislative history, when you look at Charlie, you'll see Mr. Weinberg's statement and Mr. Weinberg's legislative history, and you will see that they are virtually identical, and you will see no mention of Lesnoy in those documents, no mention of the existence of a dispute. So really, all Congress was aware of was that Lesnoy had been anointed and blessed by the Secretary and Congress was not informed that there was a dispute in that country. It virtually had to mention Lesnoy as a Coney Agnew. But it did. It mentioned it. And we were faced with a statute which mentions Lesnoy. And we're supposed to say, well, Congress was duped? Well, that would be one logical conclusion, but let me offer another analysis to your honor. Congress was duped, by the way, but let me offer a better analysis in keeping with the law of the circuit. Where as here, you've got a statute, you've got the amendment of the statute, and you have an argument that statute number two effectively recognizes ratified, you can use any word you want, you've got to repeal the village eligibility requirements of ANCSA and the enforcement provisions of ANCSA. You've got to repeal those to say nothing to the EPA before the argument that 1427 somehow magically anointed Lesnoy will fly. You can't get there otherwise. You can't get there from here otherwise. The law of the circuit, the law of every circuit to my knowledge, is that where you have no specific mention of eligibility, in other words, 1427 talked a lot about eligibility in subsection E and again in 1432, and where it recognized the problem, said look, here's an entity, here's a problem, here's a solution. That didn't happen with regard to Lesnoy. In that setting, there must be an irreconcilable conflict in the sense that there is a quote positive repugnancy between the two sections and there is no such repugnancy here. The purpose of 1427, as is obvious from the bill and its history, was to effect a land swap. That's it. The land swap took place. In order for the land swap to take place, ANCSA provisions with regard to land selection and land entitlement had to be amended, altered for acceptance, and they were. There's just no conflict. There is no positive repugnancy between those provisions and their alteration or change to effect the goal of 1427 and ANCSA's eligibility and enforcement provisions. If I answered your question. Well. I tried. I heard your argument. Thank you. All right. A couple of things about the Secretary's analysis that I would like to make plain and recorded, if I could. The Deputy Solicitor said, reading section 1427 as a whole and in the absence of any clear evidence to the contrary, I conclude that the language of subsection B1 and A2 is best read, is ratified, the Secretary's, brackets 1974, close brackets, eligibility determination with respect to Lesnoy, excerpts of 134. Best read is a policy choice. Best read is a policy choice. Those choices are for Congress, I respectfully suggest, not for the Secretary, and respectfully not for the courts. That's the law of the circuit, as we understand it. Secondly, the legal test, the legal test employed by the Deputy Solicitor was absolutely opposite the law of the circuit, where there is no mention of any issue of eligibility, no mention, like there was in subsection E of the seven banned villages and intent to resolve their eligibility issue. Silence isn't enough. You've got to have clear language, clear expression of intent, of intent to disembowel these ANCSA eligibility and enforcement provisions, and this statute is just flat silent. So they used the wrong legal test. They used the concept of ratification, and as you'll be able to observe, Edmund's excerpts on page 115, volume 1, ratification does not, we've talked about this at some point, ratification of course has no application here because the Secretary's 74 certification was not contrary to law, in fact it was mandated by the terms of ANCSA itself. Our challenge, of course, goes off on the notion that this one, despite the certification, was not entitled to be deemed eligible. Finally, the Deputy Solicitor and hopefully the District Court seem to talk about legislative history, but what they speak of does not qualify as legislative history, either in this circuit or any circuit of which we are aware. Because the legislative history spoken by a Deputy Solicitor involves a different bill, S. 1824, a different Congress, it's about a legislative amendment that was never adopted into S. 1824. The hearings took place 9-24 of 1975, five years before ADOCA was passed, and nine months before Mr. Stratton ever filed his original complaint. Five, nine months. So Congress could not have known. I mean, first of all, it's not legislative history. Second of all, if it was, Congress couldn't have known of this challenge and of this issue because of the time. If we go to the real legislative history, again, the fencing brought entirely to our That legislative history, Mr. Weinberg, CONIAC's lawyer, did a very good job of keeping quite secret that there was an outstanding challenge to those with his eligibility. Congress cannot be deemed, as we described in detail, to have mooted or decided a matter of which there can be shown to be no actual knowledge, and I've eaten into my reserve of time, but I'd be happy to answer any questions. Now, why don't you save your time? May it please the Court, I am David Shilton, I'm here representing Secretary Kempthorne. I plan to take nine minutes, and then I will share three minutes with Mr. Middleton, who represents CONIAC, the regional corporation, and three minutes with Mr. Fitzgerald, who represents Lesnoi, the village corporation. We submit that Secretary Kempthorne correctly found that Section 1427 of ANILCA did ratify Secretary Morton's 1974 decision finding that the Woody Island Village Corporation, Lesnoi, Inc., is entitled to land conveyances under ANILCA. And that is made clear on the face of the statute. It's already been mentioned that Lesnoi, Inc. is specifically mentioned in Section 1427, but there's more than that. In Section 1427K, not only is Lesnoi mentioned as one of the CONIAC efficiency village corporations, it says it is one of the corporations entitled under Section 14A of ANCSA to a conveyance of a certain estate. You cannot be entitled unless you are an eligible corporation. Then, you go to 1427B, and that says that in satisfaction of the CONIAC efficiency village's entitlement to land on the Alaska Peninsula, that instead they'll receive, as members of the board, land on the Fognac Island, and Section B sets out what the conditions will be for that. There are no conditions that relate in any way to eligibility. The conditions are only that Lesnoi and the other deficiency corporations accept that this will be in full satisfaction of their entitlement, and that the lands on the Fognac Island will continue to be open for hunting and fishing. That's it. Counsel, let me just see if I understand. Now, Lesnoi was already certified by the agency. The other seven corporations that were mentioned were treated separately because they had not yet been certified. Is that correct? That's exactly it. The other seven, the secretary had decided that they were ineligible. That went to court, and the D.C. Circuit overturned that decision on procedural grounds. That left those seven in a very uncertain situation when Congress enacted ANILCA. What it did for those seven is, in subsection E, is to say those seven are deemed to be villages, and it gave them an entitlement that was less than the other villages got. Lesnoi fell into the group of villages where there was not a question about eligibility. It got the same amount as the other three cognac deficiency corporations that got the full entitlement because there was simply no question in Congress's mind that Lesnoi and these other three were fully eligible. Thank you. What that shows is that Congress was very able to deal with situations where there was a continuing question about eligibility, and it did that with the deemed villages. But Lesnoi just was not in that category. I also think what that shows is that there's no need for a repeal by implication in this case. With regard to the seven deemed villages, Congress didn't repeal the original provisions of ANCSA that pertained to eligibility. It just said, we're going to fix this situation, and here's what we're going to do. We're going to deem them as eligible. Same way with the cognac deficiency village corporations like Lesnoi. No need to amend anything that happened in ANCSA. This was Congress's tying up of loose ends, if you will, to try and complete the settlement, which unfortunately has gotten delayed in some cases by lawsuits and so forth. Congress's intent was to have everything be final. To do that, it doesn't need to amend the old provisions of ANCSA Section 11, which in any case were only meant to be enforced for a limited period while the Secretary made the initial determinations about eligibility. This is not an implied repeal question at all. It is rather a question of Congress ratifying what the Secretary had decided in 1974. What's your response to counsel's argument that Congress really was not given the full facts, didn't realize there was a dispute, legislative history drafted by Lesnoi's counsel? What do we do with that? I don't see it. I don't think there's any evidence that that is the case. What we have are the reports and some hearings, and there's additional evidence of that kind of fraud that certainly ties in. In this record, Congress was aware that there were disputes that had arisen. It was brought to Congress's attention in 1975 that there were questions about Woody Island, Lesnoi's eligibility. Now that was five years before ANILCA. Whether that carried through or not, it's hard to tell. But I think it's really legislative history. You don't really need legislative history to show ratification in this case. Ratification is just clear on the face of the statute. And I think what's important from the legislative history is repeated references that Congress wanted to get this thing settled. It wanted to get things concluded with finality and without litigation. And if Stratton is right that Congress somehow made these conveyances to Lesnoi conditional on it someday finally concluding this long-term battle, that would have been completely contrary to the overall intent of the statute to leave this sort of ticking time bomb in this conveyance to Lesnoi because if far down the line Lesnoi were ultimately determined not to be eligible, that would have scrambled the whole Section 1427 and this whole joint venture clause because all of the shares would have had to be rearranged. So I think this case can be decided just on the basis of the statutory language which in several provisions makes clear that Congress was conveying this land to Lesnoi as a village corporation entitled to land under MANGSA. And I think rather than this being a repeal ratification case, this is a ratification case like the Alaska versus United States case from the Supreme Court where basically the Supreme Court said that in this area of property conveyancing where in that case the United States decided that certain land would not go to the state of Alaska because it was part of the Naval Patrol and Reserve and they were submerged lands and Alaska said well wait a minute, those lands were never reserved to the United States properly in the first place. And the court said you know that really doesn't matter anymore. We have here in the Statehood Act specific conveyances. It's clear that Congress intended these submerged lands not to be conveyed and it's clear that they have been reserved in the first place to the United States. The fact that there may be some legal issue hanging out there about it is irrelevant because that's all mooted. So this is kind of a unique area where Congress is exercising its property powers and its property powers over natives to do settlements where Congress can employ fixes and that's what it was doing here. It was trying to settle this with finality. I don't want to take any of the time from my colleagues. Alright, thank you. Thank you. May it please the court. My name is Collin Lewis and I represent Coney Head. I wanted to discuss two aspects of Chevron deference in this case. In the first, and I wanted to discuss what it was that the Secretary did. The Secretary looked at two statutes really. The Alaska Native Land Settlement Act and the Alaska National Interest Lands Conservation Act, ANILCA and ANCSA. And in deciding that the ANILCA provision clearly indicated and ratified an action of the Secretary, he was doing what it is that generally speaking secretaries of agencies do. He was looking at two statutes, he was finding one which was specific as described by Mr. and in that case, and that because the purpose of the ANILCA statute was to settle all of the 12A selections by native villages, you must remember that 12A selections by native villages was necessary to be decided before you could get to 12B and the final decision on what amount of 12B lands there were and both of those had to be decided before you could get to 12C lands and they all dealt with villages. Counsel, excuse me, but in the interest of time, let me just ask, why are we even concerned with Chevron deference? This is a question of statutory construction that does not require agency expertise. I'm only indicating this. I agree with Mr. Shilton that if you look at the statute on its face, it said it ratifies the existence of Lesnoy. You don't have to get to Chevron. All right. I just wanted to make that clear. You know, it's sort of like a little backup position in the amendment. I think we understand Chevron deference. Very good. All right. Very good. I was going to do it within the framework of home builders. I don't think you need to. We don't need to get a primer on Chevron. The other one was the statute of limitations, which is figure 902 of the NILCA. There was a statute of limitations in there because although 12A selections, the amount of 12A selections have been decided, the process by which you determine, for instance, the FOGMAC lands were all public lands on a FOGMAC island. One had to determine in holdings, for instance, and go through a process. There was a process which was going to be gone through because we decided which land it was. And that's the purpose of 902. Unless you have other questions. No, I don't think so. These have all been covered in the brief, so believe me, we're aware of them. Thank you. May it please the court. My name is Jack Fitzgerald, and I represent Lesternoy, Inc. I would like to draw the court's attention to three pieces of evidence in the record that are outcome determinative that require dismissal of this appeal. First, most importantly, is Excerpt of Record 230, which is the November 21, 1995, final judgment dismissing the 1976 case. That gives rise to application of statute of limitations. The second piece of evidence is ER-318. That is in the matter of Lesternoy, Inc., in re-appeal of Omar Stratman. That was the Department of the Interior's dismissal of his challenge to the eligibility of Lesternoy. That was back in 1978. That gives rise to the doctrine of administrative finality, which bars Mr. Stratman from bringing another claim challenging Lesternoy's eligibility. And thirdly, ER-303, which is in Ray Woody Island, the ANCAP decision in August 1974, deciding that Woody Island is eligible. And that gives rise to the doctrine of collateral estoppel, which bars Mr. Stratman from re-litigating the issue of Woody Island's eligibility. Turning to the statute of limitations issue, my colleague just referenced briefly Section 902, which bars this court from exercising jurisdiction over this claim. It's quite clear it states that secretarial decisions under the Alaska Native Claims Settlement Act shall not be subject to judicial review unless such action is brought within two years of the Secretary's decision or within two years of the expected date of ANILCA, which was December 2, 1980. So, Mr. Stratman cannot challenge the 1974 eligibility decision in this 2002 case that is on appeal. He did have a prior action where he was challenging the eligibility. It was a 1976 suit. That was brought within two years of the 1974 eligibility ruling. However, that case was dismissed on November 21, 1995 for the final judgment. And, foolishly, he failed to appeal from that. There was a procedure in the circuit under the U.S. v. Henry to overturn a dismissal where a statute of limitations could run while the case is pending at the agency. And the Ninth Circuit put him on notice of the jurisdictional stripping effect of that final judgment in ER 391, which is Stratman v. Lesnoi, in April 1996, a case that Judge Peschema was on the panel. And that was an appeal from an interlocutory preliminary injunction ruling. And the court dismissed, saying, there's no more jurisdiction in federal court. So, he should have filed for Rule 60b, Relief, to recall that final judgment, if he intended to try to continue to pursue a challenge to the eligibility. So, I disagree with the postmate comment by Counsel to the Appellant that this is an appeal from an eligibility determination. This is simply an appeal from decision ratification that Secretary Kempthorne made. This case is not a challenge to the eligibility. That was a 1976 case, so he can't substitute one for the other. The Doctrine of Administrative Finality is also extremely important here. We've already defended ourselves successfully, Lesnoi did, with this March 24, 1978, ANCAP ruling that declared we are eligible. And he, again, took no appeal from it. So, how many times is Woody Allen going to have to defend its eligibility? Because Congress declared in ANCSA, 1601b, the settlement is to be accomplished rapidly, with certainty, without litigation. And yet, time and time again, new suits keep being brought. The statute of limitations should be enforced. And Administrative Finality is akin to res judicata. And he cannot bring another claim challenging eligibility. He already did that. Counsel, this is in your briefs. I think we hit the point. Yes, it is. And you're over time, so. Very well, that concludes my remarks. Thank you very much. My time is short. I'll try to go quickly. The Federal Defendant's comments seem to concede that there was no eligibility dispute as to Lesnoi and Milto was passed. That's what came out of Mr. Shelton's mouth. Where is the fix if we don't have a corresponding problem? That's the point. There was no problem. Congress, the problem was hidden by Mr. Weinberg, Coniac's lawyer, not put in the record. There can be no intent to fix that which is not before you as a problem. Ratification was brought up again. The concept, if it's used in its legally technical sense, the concept has no application to authorized acts. The Secretary's certification in 1974 of Lesnoi may have been wrong, has been shown to be wrong, but it's not unauthorized. It's specifically statutorily demanded. Ratification has no place in the discussion. Finality. A few things about finality. The purpose of finality, pounded upon by my opponents. It's not in the general purposes section of an ILCA. Take a look at Title I, Section 101. Ain't there. It is mentioned nowhere in the legislative history drafted by Coniac's own lawyer. It is not there. But there are many things that suggest that there was no intent to gloss over imperfection. If you take a look at our reply brief at page 16, we go into them. 1427F. All conveyances were to be subject to the terms and conditions of ANCSA. Again, our opening brief at page 29 and 30 goes into more detail. The definitions of Coniac Village, Coniac Village Court, 1427A, 7, and A, 8, rely on referred to in ANCSA sections 3 Charlie and 8 Alpha. Take a look at our opening brief at pages 30 and 32. The general definitions in ANILCA 102, including Village Court, again incorporate ANCSA definitions at 8A. We talk about this at pages 32 and 33 of our opening brief. Now here's my personal favorite. Section 1412, which says, except as specifically provided in this Act, except as specifically provided, ANCSA is fully applicable. Nothing in this Act shall be construed to alter or amend any such provisions. How do they get around the eligibility and enforcement provisions? How do they do that in the face of that language? And to wrap up on this topic, section 902 Alpha of ANILCA says, you've got to bring your eligibility challenges. You don't have to get them done within two years. You've got to start the darn thing within two years. That means roughly 1982. We started our challenge in 1976. 1976. ANILCA specifically provided for the very action that we're bringing and gave people that were to act six years. I think we understand that argument. We do. I will move on to my final comments. Please, because you're over time. We would like this Court to address the issues raised by Mr. Fitzgerald. We'd like this Court to reconsider its striking of the excerpt that's all there. We'd like to bring this to an end. With apologies to Mr. Stratton, we've been at this a while. Neither one of us are getting younger and better looking. Thank you. All right. Thank you. We know this is an important case to all of you. The case argument is submitted. We appreciate the argument. All right. We'll go to the next case on Calendar Porter v. Osborne. Do we need the security guard anymore? No.
judges: Nelson, Tashima, Fisher